*Zhou Yi v. Garland*

BIA
Leeds, IJ
A206 458 530

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of April, two thousand twenty-four.

PRESENT:
> JOSÉ A. CABRANES,
> MICHAEL H. PARK,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

MEI ZHOU YI,
> *Petitioner,*

v.                                                          22-6246

                                                            NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:                    Gary J. Yerman, Esq., New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Cindy S. Ferrier, Assistant Director; Michele Y. F. Sarko, Senior Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Mei Zhou Yi, a native and citizen of the People's Republic of China, seeks review of a May 4, 2022, decision of the BIA affirming an August 2, 2018, decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mei Zhou Yi*, No. A 206 458 530 (B.I.A. May 4, 2022), *aff'g* No. A 206 458 530 (Immig. Ct. N.Y. City Aug. 2, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review the agency's "legal conclusions *de novo*, and its factual findings, including adverse credibility determinations, under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (internal quotation

2

marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An asylum applicant bears the burden of proof. *See* 8 U.S.C. § 1158(b)(1)(B)(i).

> The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

*Id.* § 1158(b)(1)(B)(ii). In assessing credibility, a factfinder considers the "totality of the circumstances" and may rely on "the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood

3

goes to the heart of the applicant's claim, or any other relevant factor." *Id.* § 1158(b)(1)(B)(iii).

"An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). And in other cases, "an applicant may be generally credible but [her] testimony may not be sufficient to carry the burden of persuading the fact finder of the accuracy of [her] claim of crucial facts if [s]he fails to put forth corroboration that should be readily available." *Wei Sun v. Sessions*, 883 F.3d 23, 28 (2d Cir. 2018); *see also Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) (explaining that the agency may find testimony credible but "still decide that the testimony falls short of satisfying the applicant's burden, either because it is unpersuasive or because it does not include specific facts sufficient to demonstrate that the applicant is a refugee" (internal quotation marks omitted)). Before denying a claim solely for failure to provide corroboration, an IJ must "(1) point to specific pieces of missing evidence and show that it was reasonably available, (2) give the applicant an opportunity to explain the omission, and (3) assess any explanation given." *Wei Sun*, 883 F.3d at 31.

4

When the IJ has satisfied these requirements, we may reverse the agency's decision only if "a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4); *see also Yan Juan Chen v. Holder*, 658 F.3d 246, 253 (2d Cir. 2011).

The IJ's decision here conflates these two manners of framing a lack of corroboration, stating that the absence of corroboration undermined credibility, but focusing on its availability, which is relevant where corroboration is required for credible testimony. By contrast, the BIA treated the corroboration finding as having been made in addition to the adverse credibility determination. Regardless of how the issues are framed, the agency did not err in concluding that Zhou Yi failed to meet her burden of proof because it identified weaknesses in her testimony, and she failed to produce available corroboration of her claim that she was detained and beaten for attending an underground church in China.

Some of Zhou Yi's testimony on cross-examination was confused and unresponsive regarding her husband's church attendance after an alleged May 2011 raid. Her husband wrote in his letter that Zhou Yi secured his release from detention a week after the raid and he fled to the United States a few months later, but Zhou Yi continued attending services and was harmed as a result; he did not

mention returning to church with her or otherwise describe their activities between his detention and escape. Zhou Yi's initial testimony was that she stopped attending church for about two months, then resumed attending about once a week with her husband for about three weeks. But in response to follow-up questions, she testified that either she or both she and her husband attended church frequently after September 2011, before clarifying that she moved and began attending church more often after her husband left China. Her confused testimony was at least grounds for finding her testimony less persuasive, and we give "particular" deference to the agency's assessment of demeanor because the IJ is in the best position to assess whether a witness understood a question.[1] *Majidi*

---

[1] Still, we agree with Zhou Yi that the agency overstated the discrepancies by misstating that she testified that she attended church in the two months after the raid and that her husband's letter omitting mention of church attendance was *inconsistent* with her testimony. "[T]he probative value of a witness's prior silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose" and, while "an omission by a third party may form a basis for an adverse credibility determination," "an applicant's failure to explain third-party omissions is less probative of credibility than an applicant's failure to explain his or her own omissions" when the omission does not create an inconsistency with the applicant's statements. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 78, 81 (2d Cir. 2018).

The agency's finding that Zhou Yi gave vague testimony about her alleged 15-day detention is also weak. When testimony lacks detail, but includes the essential elements of an asylum claim, the agency may reasonably suspect that the

*v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005).

The agency identified the following corroboration that should have been provided: (1) testimony from Zhou Yi's husband, (2) records from his asylum proceedings, (3) medical records related to injuries Zhou Yi sustained in detention, and (4) a receipt for the fine she paid to secure her husband's release from detention following the first alleged raid.

As to the evidence from her husband, Zhou Yi alleged that her husband introduced her to Christianity, attended an underground church with her in China, and was present during the first alleged raid; that is, contrary to her argument that his testimony would have been insignificant, he was a witness to events central to her claim of past persecution. His fear of being detained after losing his appeal in his own removal proceedings was not sufficient to show his testimony was unavailable where, as here, he would have benefitted from a grant

testimony is fabricated and choose to "probe for incidental details, seeking to draw out inconsistencies that would support a finding of lack of credibility," but it errs in relying on vagueness as a ground for an adverse credibility determination without making that additional inquiry. *Jin Chen v. U.S. Dep't of Just.*, 426 F.3d 104, 114 (2d Cir. 2005) (internal quotation marks omitted). Here, Zhou Yi gave details when asked, and although she said she could not provide more details, she provided a specific answer when asked to describe how many people she was locked up with.

of asylum to Zhou Yi. *See Yan Juan Chen*, 658 F.3d at 253; *see* 8 U.S.C. § 1158(b)(3)(A) (providing that the spouse of a noncitizen granted asylum may be granted the same status). Further, Zhou Yi did not give a reason when asked why she had not obtained a waiver from her husband to allow review of records from his immigration proceedings—which would not have implicated the same risk of arrest.

Zhou Yi did not demonstrate that the other evidence was unavailable. She testified that she had a fine receipt from her husband's detention, she did not know that it had not been provided, and she did not give a reason why it was not provided when its absence was raised. She alleged that the injuries she sustained in detention required multiple doctor's visits and surgery, but she did not produce records of that care. The IJ found her explanation that the hospital in China would not release those records to her parents implausible because those types of records are generally provided to the immigration court. The record does not compel a contrary conclusion.[2] *See Siewe v. Gonzales*, 480 F.3d 160, 168–69 (2d Cir. 2007) (while the agency may not engage in "bald" speculation, "[t]he speculation

---

[2] Notably, a supporting letter from Zhou Yi's parents does not mention an attempt to secure records on her behalf. Zhou Yi's argument that the agency failed to assess her explanation is contrary to the record because the IJ explicitly rejected it.

8

that inheres in inference is not 'bald' if the inference is made available to the factfinder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience").  Moreover, Zhou Yi testified that she received follow-up care in the United States, and her testimony that she did not know that those records were necessary does not establish that they were unavailable.

Zhou Yi argues that her testimony and documentary evidence were sufficient to satisfy her burden of proof, and that the agency overlooked some evidence.  Of the evidence that she provided, only a fine receipt, letters from China, and a letter from her husband related to her alleged past persecution.  The agency acknowledged this evidence and concluded that it did not satisfy her burden, including because the fine receipt did not mention the alleged detention. "We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence," *Y.C.*, 741 F.3d at 332, and the agency is not required to credit letters from interested parties or individuals unavailable for cross-examination, *see Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (holding that an "IJ acted within her discretion in according [letters] little weight because the declarants (particularly [the applicant's spouse]) were interested parties and neither was available for cross-examination").  And, as noted above, the agency

9

can deny a claim where reasonably available evidence has not been presented. *See Wei Sun*, 883 F.3d at 28.

In sum, the agency reasonably concluded that Zhou Yi failed to satisfy her burden of proof because it pointed out weaknesses in her testimony and identified specific, relevant evidence that she should have provided, and her explanations do not compel the conclusion that this evidence was not reasonably available. *See* 8 U.S.C. § 1252(b)(4); *Wei Sun*, 883 F.3d at 31; *Yan Juan Chen*, 658 F.3d at 253. Because Zhou Yi's asylum, withholding of removal, and CAT claims all rested on the same factual basis, the agency's denial of asylum is dispositive of all relief.[3] *See Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010) (holding that an applicant who fails to establish fear of harm required for asylum "necessarily" fails to meet higher standard for withholding of removal and CAT relief).

---

[3] We therefore do not consider the Government's argument that Zhou Yi's CAT claim is unexhausted. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

For the foregoing reasons, the petition for review is DENIED. All pending

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court